# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:08-CR-0040-RDP-PWG** |
| | } | |
| **JAMES LeRAY McINTOSH,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant's Motion to Dismiss (Doc. #6) filed March 3, 2008. Defendant moves to dismiss the indictment filed in the above-styled action because he claims it was issued in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. The Government filed a Response to Defense Motion to Dismiss Indictment (Doc. #14) on March 11, 2008.

## I.     Statement of Facts

On September 25, 2007, an indictment was returned in case number 2:07-cr-00395-RDP-RRA charging Defendant James LeRay McIntosh with one count of possession with the intent to distribute five kilograms or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and (b)(1)(C), and one count of carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The initial indictment alleged that those offenses occurred on or about February 21, 2007.

However, the evidence in the case, including the discovery provided to Defendant by the Government, revealed that Defendant McIntosh had committed the offenses on November 12, 2005. While all parties should have been aware that the discovery indicated that the offenses occurred in

2005, the matter nevertheless was placed on the undersigned's November 28, 2007 consent docket.

And, despite the error, Defendant McIntosh pled guilty on November 28, 2007 to the charges, and

the court accepted his plea of guilty.

During the plea hearing, Assistant United States Attorney ("AUSA") Gregory R. Dimler

provided the following factual basis for the plea:

MR. DIMLER:      The government would expect the evidence to show that on November 12th, 2005, Jefferson County sheriff's office deputy Barton conducted a traffic stop of the defendant, James LeRay McIntosh, Jr.  After checking the vehicle tag against NCIC, ACGIS and learning that it had a suspended license and outstanding warrants, the defendant was asked and initially identified himself as Barry Lewis, but could not produce identification or identifiers.  While talking with McIntosh, the officer noticed an open container of alcoholic beverage in the back floorboard.

                        The defendant ultimately admitted to being James McIntosh and was arrested pursuant to the warrants.

                        During an inventory search of the vehicle, prior to towing, the following items were recovered from the glove box: A Ruger 9 mm pistol, scales, a bag of crack cocaine, a bag of powder cocaine, Xanax tablets.  The total weight was approximately 20 grams.  And I want to say the lab report came out at 20.32 grams.  The total weight of the powder cocaine was approximately 17 grams, which I believe the laboratory revealed 17.03 grams.

                        When the defendant was searched incident to arrest, he was found to be in possession of one thousand four hundred and thirty-nine dollars of U.S. currency.

                        The defendant, after waiving his Miranda rights, admitted owning the firearm and controlled substances in the vehicle.

THE COURT:      All right.  Very well.  I heard the Assistant U.S. Attorney briefly outline the facts the government would expect to prove at trial.  Are those facts substantially correct?

| | |
|---|---|
| MR. DRENNAN:<br>[Defense Counsel] | If I can interject.  We certainly agree and stipulate that Mr. McIntosh was in possession of five or more grams of cocaine, and was also in possession of a pistol or a firearm in relation to the drug trafficking crime.  Those facts, over and above, while we certainly don't dispute Mr. Dimler's assertion that he would expect to prove them at trial, we do, to the extent it could have an impact in sentencing, reserve a right to object and demand proof thereof at sentencing. |
| THE COURT: | All right.  Mr. Dimler, do you understand that? |
| MR. DIMLER: | Yes, Your Honor.  And as we discussed before the hearing, I think we could satisfactorily present evidence to five grams or more of crack cocaine.  I'm a little bit concerned with the penalty section of (b)(1)(C), I don't know, I mean, these would be things we would have to prove to a jury beyond a reasonable doubt as well.<br><br>And I'm concerned that that remaining amount, whatever it is, a quantity of cocaine – detectable amount, Your Honor. |
| THE COURT: | Is there an admission regarding detectable amount of cocaine hydrochloride? |
| THE DEFENDANT: | Yes. |
| MR. DIMLER: | I'm satisfied, Your Honor. |
| THE COURT: | All right.  So, in other words, where he is admitting, what I want to make sure, and I probably ought to be asking Mr. McIntosh this, you are admitting to no more than five grams or more of the crack cocaine, and a detectable amount of the cocaine hydrochloride, the powder cocaine? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Is that correct, Mr. McIntosh? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | But you and your lawyer may very well object to any amount assigned above those amounts, and let me resolve that at sentencing, and you understand that that would be done based not beyond a reasonable doubt, but a preponderance of the evidence? |

3

THE DEFENDANT:   Yes, sir.

THE COURT:   Have you talked about those different standards of proof with your lawyer?

THE DEFENDANT:   Yes, sir.

THE COURT:   Okay.  That may be an issue at sentencing unless the parties work it out.

MR. DRENNAN:   It may not be.  It's just an issue that continues to come up.  I wanted
[Defense Counsel]   to address it.

MR. DIMLER:   Judge, if I may, out of an abundance of caution, since we don't have a stipulated set of facts, I do want to make sure that the offense he is pleading to involved possession with the intent to distribute these items, not mere possession, and also he understands that the possession of the gun, carrying the gun in furtherance of the offense is actually elements –

THE COURT:   I think he understands that based upon my explanation about what you would have to prove beyond a reasonable doubt to convict him.

But, Mr. McIntosh, just to be clear and on the record, you understand that those are things the government would have to prove if it went to trial, and those are things that you are admitting to today and they don't have to prove those things, do you understand that?

THE DEFENDANT:   Yes, sir.

THE COURT:   I thought that was the case.  With the exception of what your lawyer said, did you do the things that Mr. Dimler said you did?

THE DEFENDANT:   Yes, sir.

THE COURT:   And did you know you were violating the law when you did those things?

THE DEFENDANT:   Yes sir.

(Tr. at 17-22).

4

On December 17, 2007, over two weeks after the plea, the AUSA advised counsel for Defendant and the court of the error in the indictment.   Accordingly, the undersigned set a conference in chambers for December 18, 2007 to discuss the matter.   Those present at the hearing before the undersigned were defense counsel Derek Drennan, AUSA Dimler, and Courtroom Deputy Tom Pappas.

Although no court reporter transcribed the conference, the parties agree as to what transpired. The conference began with an explanation and apology by the AUSA for the error in the indictment. The court acknowledged that AUSA Dimler had made a mistake and reassured him that everyone makes mistakes and that the court's only goal was to correct the error in the best way possible.   All counsel expressed surprise at the error and each stated that he could not believe that he had not caught the discrepancy earlier.[1]

Likewise, the court accepted some responsibility for accepting the plea and not recognizing the error because the November 12, 2005 date was clearly mentioned by the AUSA during the factual basis for the plea discussion in open court.   (Tr. at 17).   The court indicated that had the discrepancy between the dates been revealed by a party or otherwise detected by the court during the plea hearing, the court would not have accepted Defendant's plea.

Various ideas were proposed to remedy the error, but no solution was reached, and the conference was adjourned to allow the Government to consider its options.   Ultimately, the Government elected to file a new indictment.   However, on January 24, 2008, before the new

---

[1]The defense position, which was maintained throughout the discussion, was that the Government was responsible for the error and thus should propose the solution to correct the error. Defendant was not necessarily agreeable to any of the options proposed, but he recognized that the error was serious.

indictment was returned, Defendant's bond was revoked by Magistrate Judge Armstrong due to Defendant's noncompliance with the terms of his pretrial release.

On January 29, 2008, a new indictment was filed in the instant case, 2:08-cr-00040-IPJ-PWG,[2] alleging the correct offense date:   November 12, 2005.   On January 30, 2008, the Government filed a motion to dismiss the indictment without prejudice (Doc. #16) in the previous case, 2:07-cr-00395-RDP-RRA.   Although Defendant did not have sufficient time to respond to the motion in writing, counsel for Defendant advised the AUSA that Defendant would not object to the Government's motion.   The court granted the Government's motion to dismiss in 2:07-cr-00395-RDP-RRA on January 30, 2008.

On January 31, 2008, Defendant McIntosh was released on bond in case number 2:08-cr-00040-RDP-PWG.   Thereafter, on March 3, 2008, he filed this motion to dismiss the instant indictment because he claims it violates the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.

## II.    Motion to Dismiss

In support of his motion, Defendant makes two arguments.   First, Defendant contends that he "has already plead guilty in case number CR07-00395-RDP-RRA to the same charges encapsulated in the above-styled case and is being prosecuted a second time for those same offenses."   (Doc. #6 at p. 3).   Second, Defendant asserts he "has already been subjected to a period of incarceration for the charges in case number CR07-00395-RDP-RRA" and "is now facing

---

[2]Although initially assigned to Judge Johnson (IPJ), the case was reassigned to the undersigned on April 1, 2008.

6

additional incarceration due to these same allegations." (*Id.*)  The court disagrees and will address each of these arguments below.

In the present case, although Defendant McIntosh was adjudicated on November 28, 2007 to be guilty of the charges in the 2:07-cr-00395-RDP-RRA indictment, the undersigned was unaware at that time of the error in the indictment.  The Government argues that this error does not give rise to double jeopardy for two reasons: first, the variance between the factual basis for the plea and the indictment means that jeopardy could not have attached; and second, even if jeopardy did attach, Defendant's plea was effectively withdrawn and therefore Defendant continues to face the same jeopardy as in the first action.  Because the second argument resolves the issue, the court will address it alone.

For Fifth Amendment purposes, it is generally true that jeopardy attaches at the time of a plea of guilty.  *United States v. Sanchez,* 609 F.2d 761 (5th Cir. 1980).  However, it is well-established that "the attachment of jeopardy does not automatically preclude the retrial or re-indictment of a defendant for the same crime."  *United States v. Thurston*, 362 F.3d 1319, 1323 (11th Cir. 2004) (citing *Illinois v. Somerville*, 410 U.S. 458, 459 (1973)).  In *Thurston*, the Eleventh Circuit found that double jeopardy did not bar prosecution of a man indicted twice for the same crime.  *Id.*  In the district court, Thurston was indicted for allegedly violating 18 U.S.C. § 1115 and thereby negligently causing the death of a crewman on the vessel he commanded.  *Id.* at 1321.  Thurston plead guilty to the initial indictment.  *Id.*  At sentencing, the district court noted that the indictment alleged only simple negligence, but that the statute required allegations of gross negligence.  *Id.* at 1322.  Thurston moved to dismiss and the court granted his motion.  *Id.*  Thereafter, a different grand jury returned another indictment, this time alleging charging gross negligence.  *Id.*  The district court

7

denied Thurston's motion to dismiss for double jeopardy, and the Eleventh Circuit heard the case on interlocutory appeal. *Id.*

In upholding the district court's ruling that the defendant was not subjected to double jeopardy, the Eleventh Circuit stated: "[w]e cannot hold that a judge's dismissal of a defective indictment, which preserved judicial resources, protected Thurston from the expense and ordeal of a futile trial, and prevented the Government from perfecting its trial strategy, also created a double jeopardy bar to prosecution on a new indictment." *Id.* at 1323. In so finding, the Eleventh Circuit analogized the dismissal of the defective indictment to a defendant withdrawing his guilty plea. *Id.*

Although Defendant points to language in *Thurston* that states "a defendant's jeopardy does not terminate when, *upon defendant's motion*, an indictment is dismissed or a guilty plea is vacated," *id.* (emphasis added), that language is inapposite here. Contrary to Defendant's assertion, this court reads the italicized phrase to bar prosecutorial abuse,[3] not to create a formalistic rule that the application of jeopardy depends on which attorney moves first to dismiss a clearly flawed indictment. In any event, in this case, the court is satisfied that Defendant agreed (or at least did not state any objection) to the dismissal of the defective indictment.[4] This case might be different if the Government's motion was made over Defendant's objection, but that is not an inquiry this court must consider as there is nothing to suggest that Defendant had any objection. Thus, the court finds

---

[3]In *Thurston*, the defendant moved to dismiss the second indictment on two grounds: double jeopardy and prosecutorial misconduct. *Thurston*, 362 F.3d at 1322-24. The court viewed those grounds as "related." *Id.* at 1323. It rejected the prosecutorial misconduct argument for much the same reason that it rejected the double jeopardy argument, suggesting a strong linkage between the rationales for rejecting both. *Id.* at 1323-24.

[4]Defendant did not state to the Government any objection to dismissal before learning that the Government was electing to dismiss the first indictment, nor did he object (before or after dismissal) to the court granting the Government's motion.

8

that *Thurston* controls and that Defendant is still under the same jeopardy as attached pursuant to the first indictment.

Furthermore, even if this case does not fall squarely into the facts of *Thurston*, it is important to emphasize that there was <u>never</u> a danger of Defendant facing punishment under the defective indictment. Once the court realized that the first indictment contained the wrong date, it set a hearing with the parties to determine the proper course of action and made clear at that hearing that had it realized there was an incorrect date at the time of the plea hearing, it would not have accepted Defendant's guilty plea. The course that the Government eventually chose, *i.e.*, moving to dismiss the indictment and seeking a new indictment from a different grand jury, resulted from the frank discussion during that hearing.[5]

Similarly, Defendant's second argument is without merit. His focus on this "incarceration" under the old indictment is simply off the mark with respect to the double jeopardy issue. Double jeopardy is applied in order to prevent a criminal defendant from a second prosecution after acquittal – a second prosecution for the *same offense after conviction* and against multiple punishments for the *same offense*. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). Here, neither occurred. Defendant's bond was revoked, but not because he was sentenced or ever "in custody" pursuant to a conviction from the indictment. Defendant McIntosh was in custody from January 24, 2008 until January 31, 2008 as a result of his failure to adhere to bond conditions in case number 2:07-cr-00395-RDP-RRA. Defendant McIntosh was incarcerated

---

[5]Indeed, granting the relief Defendant now seeks – dismissal of the pending charges in the instant case – would essentially be an admission that Defendant led this court into error. Defendant was aware (or should have been aware) of the defect in the first indictment based on the factual basis stated at the consent hearing. He was also part of the discussions that lead to the dismissal of the previous indictment.

seven days before he was released on a new bond under the new indictment.  Even if it is assumed that jeopardy attached with the guilty plea and all that remained was to impose sentence, *no sentence was ever imposed*.  Thus, the "incarceration" alleged by Defendant is not relevant to the double jeopardy issue as it was not the result of a sentence levied against him for the offenses charged in the indictment, but rather his violation of his bond's conditions.

Even if jeopardy attached, there is no possibility that Defendant McIntosh would be subjected to a second conviction because there was no *first* conviction given that the first indictment was dismissed.  Likewise, there is no possibility of a second punishment because no punishment has yet been imposed on Defendant.

## III.    Conclusion

For the reasons stated above, the court finds as a matter of law that Defendant's motion to dismiss is due to be denied.

**DONE** and **ORDERED** this ____7th____ day of May, 2008.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE